IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL FORBES | : | CIVIL ACTION |
| | : | |
| | : | NO. 09-1256 |
| v. | : | |
| | : | |
| DAVID DIGUGLIELMO, et al. | : | |

**OPINION**

**Slomsky, J.**                                    **February 29, 2012**

T<small>ABLE OF</small> C<small>ONTENTS</small>

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        A.      28 U.S.C. § 2254 Review.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        B.      *De Novo* Review of Objections to Report and Recommendation by
                District Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        A.      Petitioner's Objections Beyond the Scope of Federal Habeas Review . . . . . . . . 7
        B.      Analysis of Petitioner's Remaining Objections. . . . . . . . . . . . . . . . . . . . . . . . . . 8
                1.      Level of Deference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
                2.      Factual Findings.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                3.      Double Jeopardy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
                4.      Due Process... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                        a.      Procedural Due Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                        b.      Substantive Due Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
                5.      Significance of Aggregation by the Department of Corrections. . . . . . . 20
                6.      Denial of Certificate of Appealability... . . . . . . . . . . . . . . . . . . . . . . . 21

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.      **INTRODUCTION**

Before the Court is the Revised Petition of Michael Forbes ("Petitioner") for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 4.)  Petitioner seeks relief based on

alleged violations of his rights under the Double Jeopardy and Due Process Clauses.  For

purposes of this Opinion, the Court has considered the Petition for Writ of Habeas Corpus (Doc.

No. 1),[1] Petitioner's Revised Habeas Corpus Petition and Memorandum in Support of the

Revised Habeas Corpus Petition (Doc. Nos. 4-5), Answer to the Petition of Respondent

Pennsylvania Department of Corrections ("Department") (Doc. No. 12), Memorandum in

Support of Respondent Department's Answer (Doc. No. 14), Petitioner's Reply in Support of

Petition (Doc. No. 16), Answer to the Petition of Respondent Catherine McVey (Doc. No. 20),

United States Magistrate Judge L. Felipe Restrepo's Report and Recommendation (Doc. No. 24),

Petitioner's Objections to Magistrate Judge Restrepo's Report and Recommendation (Doc. No.

25), Respondent McVey's Brief in Opposition to Petitioner's Objections (Doc. No. 26),

Respondent Department's Brief in Opposition to Petitioner's Objections (Doc. No. 27),

Petitioner's Supplemental Memorandum (Doc. No. 33), Respondent Department's Supplemental

Memorandum (Doc. No. 34), and the pertinent state court record.

Following a review of the filings by the parties and the pertinent record, Magistrate Judge

Restrepo issued a Report recommending that the Petition for a Writ of Habeas Corpus be denied

and that a certificate of appealability not be issued.  (Doc. No. 24.)  Petitioner filed Objections to

---

[1] On March 3, 2009, Petitioner filed a Petition for a Writ of Habeas Corpus. (Doc. No. 1.)
Petitioner did not use the required current standard 28 U.S.C. § 2254 form.  By the Court's Order
dated April 22, 2009, Petitioner was furnished with a blank copy of the Court's standard form.
(Doc. No. 2 at 2.)  On May 21, 2009, he filed his Revised Petition for a Writ of Habeas Corpus
(Doc. No. 4).

the Report and Recommendation.  (Doc. No. 25.)  Respondents then filed their Response to

Petitioner's Objections.  (Doc. Nos. 26-27.)  For reasons that follow, the Court will approve and

adopt Magistrate Judge Restrepo's Report and Recommendation (Doc. No. 24), and deny the

Revised Petition for a Writ of Habeas Corpus (Doc. No. 4).

## II.    FACTUAL BACKGROUND

On February 18, 1981, Petitioner received a sentence of ten to twenty years in the Court

of Common Pleas of Delaware County after pleading *nolo contendere* to a rape charge.  (Doc.

No. 1 at 2.)  This sentence ("Sentence 1") took effect February 23, 1980, setting a parole

eligibility date of February 23, 1990, and a maximum sentence date of February 23, 2000.  (Id.)

On February 11, 1982, Petitioner was convicted of another rape and sentenced to seven to fifteen

years incarceration ("Sentence 2").  (Id.)  Sentence 2 was ordered to be served consecutive to

Sentence 1.  (Id.)

After Sentence 1 and Sentence 2 were imposed, the Pennsylvania Department of

Corrections calculated Petitioner's sentence as follows:

> On February 23, 1991, the [Pennsylvania Board of Probation and Parole
> ("Board")] paroled Forbes on Sentence 1 to begin serving Sentence 2.[2]  The Board's
> records with respect to Sentence 2 reflected that Forbes would be eligible for parole
> on February 23, 1998, and that Forbes' maximum date was February 23, 2006.
> Following the Board's grant of parole, the Department commenced the running of
> Sentence 2.
> On February 23, 2000, Forbes completed serving Sentence 1.  The Board and
> the Department informed Forbes that he was serving only Sentence 2 and that
> Sentence 2 would expire on February 23, 2006. However, on February 23, 2006, the

---

[2]  Petitioner's February 23, 1991 parole was "constructive parole." "'Constructive parole'
occurs when a prisoner is paroled from one sentence to begin serving . . . a consecutive sentence.
Thus, even though the prisoner is still incarcerated, he is on parole from the first sentence while
simultaneously [beginning to] serv[e] the . . . second sentence." Johnson v. Pa. Bd. of Prob. &
Parole, 532 A.2d 50, 52 n.4 (Pa. Cmmw. Ct. 1987).

Department did not release Forbes from prison.

     On February 24, 2006, the [Department] aggregated Sentence 1 and Sentence 2, resulting in a total sentence of seventeen to thirty-five years, with a parole eligibility date of May 21, 1997, and a maximum sentence date of May 21, 2015. The Department determined that the Board erroneously paroled Forbes on February 23, 1991, and that the Board "will" rescind that parole.[3] In accordance with the Department's decision, the Board rescinded the grant of parole it had issued for Forbes fifteen years previously.

Forbes v. Pa. Dep't of Corr., 931 A.2d 88, 90-91 (Pa. Cmmw. Ct. 2007). See also Doc. No. 25 at 9-10. In sum, there was a twenty-four year period between 1982, when Petitioner received his unaggregated second sentence, and 2006, when Petitioner's constructive parole was revoked and his sentences were aggregated by the Department.

     After the Department's aggregation of Petitioner's sentences on February 4, 2006, Petitioner requested mandamus relief in the Commonwealth Court, contending that the aggregation of his sentences violated his rights under Pennsylvania state law, as well as his federal due process and double jeopardy rights. Forbes, 931 A.2d at 91. On July 19, 2007, the Commonwealth Court dismissed the mandamus petition. Id. at 95. On April 3, 2008, the Pennsylvania Supreme Court affirmed the Commonwealth Court's dismissal. On February 23, 2009, the United States Supreme Court denied certiorari. See Forbes v. Pa. Dep't of Corr., 946 A.2d 103 (Pa. 2008), cert. denied, 129 S. Ct. 1404 (2009).

     Petitioner then filed the instant § 2254 petition alleging that his due process and double jeopardy rights have been violated. (Doc. No. 1 at ¶¶ 17-35.) Petitioner does not challenge the validity of Sentences 1 and 2, but challenges their aggregation, as well as the rescission of his

---

     [3] In his Objection, Petitioner refers to this determination when he challenges Magistrate Judge Restrepo's "finding that the parole that was granted and completed on [Petitioner's] first sentence was a nullity under Pennsylvania law." (Doc. No. 25 at 4.)

parole.  (Id. at ¶¶ 18-28.)  Department responds that they did not violate Petitioner's due process

or double jeopardy rights, but merely corrected an error in the computation of Petitioner's

sentences.  (Doc. No. 12 at ¶ 12.)

**III.     STANDARD OF REVIEW**

     A.     <u>28 U.S.C. § 2254 Review</u>

Pursuant to 28 U.S.C. § 2254(d), a federal district court's review of a state law decision

is deferential.  If a state court has adjudicated the petitioner's claims on the merits, the deferential

standard set forth in § 2254(d) will apply.  Section 2254(d) precludes habeas relief on:

> any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal Law, as determined by the
> Supreme Court of the United States, or (2) resulted in a decision that was based on
> an unreasonable determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d) (2010).

However, when the state court has not adjudicated the petitioner's claims on the merits,

the appropriate standard of review for a district court is *de novo*.  <u>See</u> <u>Hameen v. State of</u>

<u>Delaware</u>, 212 F.3d 226, 248 (3d Cir. 2000).  Factual determinations by a state court, regardless

of whether the petitioner's claims were adjudicated on the merits, are presumed correct unless

rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); <u>Palmer v. Hendricks</u>, 592

F.3d 386, 392 (3d Cir. 2010); <u>Thomas v. Horn</u>, 570 F.3d 105, 116 (3d Cir. 2009).

     B.     <u>*De Novo* Review of Objections to Report and Recommendation by District Court</u>

Pursuant to 28 U.S.C. § 636(b)(1)(B) and the local rules of court, a magistrate judge has

authority to file proposed findings and recommendations.  In response, a party may file written

objections.  28 U.S.C. § 636(b)(1)(C).  In the Eastern District of Pennsylvania, Local Rule

72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation.

Under the Rule, the petitioner is required to "specifically identify the portion of the [report and

recommendation] to which objection is made."  Reid v. Lawler, No. 08-5674, 2010 WL

1186320, at *3 (E.D. Pa. Mar. 25, 2010).  The district court judge "shall [then] make a de novo

determination of those portions of the report or specified proposed findings or recommendations

to which objection is made.  [The judge] may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate."  28 U.S.C. § 636(b)(1)(C).  The Third

Circuit has "assumed that the normal practice of the district judge is to give some reasoned

consideration to the magistrate's report before adopting it as the decision of the court."

Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).

## IV. DISCUSSION

Petitioner makes thirteen objections to Judge Restrepo's findings.  (Doc. No. 25 at 2-5).

These thirteen objections fall into six general categories, each of which the Court will address in

turn:

1. Objection to the level of deference given by the Magistrate Judge to the state court
decisions as per 28 U.S.C. § 2254(d);[4]

---

[4] In Objection 11, Petitioner argues that Judge Restrepo erroneously concluded the standard of review should not be *de novo* and the Pennsylvania Supreme Court decision was on the merits.  (Doc. No. 25 at 5.)  In Objection 12, Petitioner argues in the alternative that, even if the standard of review should not be *de novo*, Judge Restrepo erroneously denied relief on the basis of a failure to show either an unreasonable application of clearly established federal law or an unreasonable determination of the facts.  (Id.)

5

2.      Objections to the Magistrate Judge's factual findings;[5]

3.      Objections to the finding that Petitioner's double jeopardy rights were not

        violated;[6]

4.      Objections to the finding that Petitioner's due process rights were not violated;[7]

5.      Objection to the significance placed on the fact that it was the Department, and

        not a judge, that aggregated Petitioner's sentences;[8] and

6.      Objection to the Magistrate Judge's denial of a certificate of appealability

---

[5]   In Objection 1, Petitioner argues that Judge Restrepo erred in finding that the Department's aggregation of Petitioner's sentences in 2006 were not a change in his sentences as imposed by the sentencing court. (Doc. No. 25 at 2.)  In Objection 2, Petitioner argues that Judge Restrepo erroneously made the factual finding that aggregation of consecutive sentences by the Department is "automatic and mandatory" under Gillespie v. Cmmw. Dep't of Corr., 527 A.2d 1061 (Pa. Cmmw. Ct. 1987).  (Id. at 3).  In Objection 4, Petitioner argues that Judge Restrepo erred in finding that Petitioner's punishments as imposed by the sentencing judges were [not] invalid under state law.  (Id.)  In Objection 7, Petitioner argues that Judge Restrepo erroneously found Petitioner's 1991 parole to be a nullity.  (Id. at 4.)

[6]   In Objection 3, Petitioner argues Judge Restrepo erroneously concluded that Petitioner lacked a reasonable expectation of finality in a release from incarceration in 2006.  (Doc. No. 25 at 3.)  In Objection 5, Petitioner contends Judge Restrepo erred in finding no double jeopardy violation.  (Id.)  In Objection 7, Petitioner argues that Judge Restrepo erroneously concluded that rescinding Petitioner's 1991 parole did not violate his double jeopardy rights.  (Id. at 4.)

[7]   In Objection 6, Petitioner argues Judge Restrepo erred in finding no violation of Petitioner's due process rights.  (Doc. No. 25 at 4.)  In Objection 7, Petitioner argues that Judge Restrepo erroneously concluded that rescinding Petitioner's 1991 parole did not violate his due process rights.  (Id.)  In Objection 8, Petitioner argues that Judge Restrepo erroneously gave weight to the fact that Petitioner was never released from prison at the time of the Department's 2006 aggregation of his sentences.  (Id.)  In Objection 10, Petitioner argues Judge Restrepo erred in failing to consider the claim that Petitioner's due process rights were violated by the unequal treatment given to sentence aggregation errors when correction of an error is sought by a prisoner versus when correction is made by the Department.  (Id.)

[8]   In Objection 9, Petitioner argues Judge Restrepo erroneously placed significance on the fact that the Department, rather than a sentencing court, performed the 2006 aggregation.  (Doc. No. 25 at 4.)

("COA").[9]

(See Doc. No. 25.)  For reasons stated below, the Court agrees that Petitioner's habeas petition

should be denied.

    A.    Petitioner's Objections Beyond the Scope of Federal Habeas Review

The United States Supreme Court has held that "[i]t is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions.  In conducting

habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68

(1991) (citing 28 U.S.C. § 2241).  The crux of Objections 2 and 4 in their entirety, and Objection

7 in part, is that Judge Restrepo erred in relying on the Commonwealth Court's interpretations of

state law.  While a federal habeas court may properly reexamine a state court's factual findings

under a deferential standard of review, inquiries into the soundness of a state court's decision

regarding state law has "no part of a federal court's habeas review of a state conviction."  Estelle,

502 U.S. at 67.  See also Rolan v. Vaughn, 445 F.3d 671, 679-80 (3d Cir. 2006).

Here, Petitioner conflates factual findings and interpretations of state law.  Objection 2

deems erroneous Judge Restrepo's classification of the "automatic and mandatory" aggregation

of Petitioner's sentences as a "factual finding."  (Doc. No. 25 at 3, 10.)  Objection 4 asserts that

Judge Restrepo erred in finding that the punishments imposed by the sentencing judges were

---

[9]  In Objection 13, Petitioner argues Judge Restrepo erred in concluding that reasonable jurists could not disagree with his conclusions regarding Petitioner's constitutional claims and in finding that a COA should not issue.  (Doc. No. 25 at 5.)

valid under Pennsylvania law.  (Doc. No. 25.)[10]  Objection 7 contends in part that Judge Restrepo

erred in "finding that the parole that was granted and completed on the first sentence was a

nullity under Pennsylvania law." (Id. at 4.)  Because Objections 2, 4 and 7 in part are based on

Judge Restrepo's reliance on Pennsylvania law as interpreted by Pennsylvania courts, they are

beyond the scope of federal habeas review.

In the Report and Recommendation, Judge Restrepo relied on the Commonwealth Court's

interpretation of Gillespie v. Commw. Dep't of Corr., 527 A.2d 1061 (Pa. Commw. Ct. 1987)[11]

to determine whether the aggregation of the sentences was "automatic and mandatory."  (Doc.

No. 24 at 10.)  Judge Restrepo also relied on the Commonwealth Court's determination that

Petitioner's rights were not violated when the Department's 2006 aggregation of his sentences

rendered Petitioner's 1991 parole a "nullity."  Forbes, 931 A.2d at 95 (citing Commonwealth v.

Tilghman, 673 A.2d 898 (Pa. 1996)).  Because the Court cannot reexamine the Commonwealth

Court's interpretation of state law with regard to either of these issues, Objections 2 and 4 in their

entirety and Objection 7 in part are not bases for granting habeas relief.

B.      Analysis of Petitioner's Remaining Objections

1.      Level of Deference

Petitioner objects to Judge Restrepo's deferential review of the Commonwealth Court's

---

[10] Objection 4, in its entirety, states:  "The finding is erroneous that the punishments
imposed by the sentencing judges were invalid under Pennsylvania law."  (Doc. No. 25 at 3.)
The Court reads this objection as arguing that Judge Restrepo erred in finding the state court
sentences were valid.

[11] In Gillespie, the Commonwealth Court heard a challenge by a prisoner to the legality
of the Department of Corrections' aggregation of his sentences, and the aggregation's effect on
his parole eligibility.  527 A.2d at 1064-65.  The court found that the Department's aggregation
was permissible, and dismissed the prisoner's claim.  Id. at 1066.

decision, arguing that Magistrate Judge Restrepo's deference to the state court decision under 28 U.S.C. § 2254(d) should not apply because the Pennsylvania Supreme Court did not adjudicate his case on the merits.  (Doc. No. 25 at 5, 18-20.)  Under 28 U.S.C. § 2254(d), a federal court hearing a state habeas petition must apply a deferential standard of review "with respect to any claim that was adjudicated on the merits in State court proceedings," unless certain exceptions apply.  28 U.S.C. § 2254(d).  Petitioner contends that his habeas petition should be decided *de novo*.  (Doc. No. 25 at 18-20.)  He argues that, while the Commonwealth Court decided his claims on the merits, the Pennsylvania Supreme Court's review was limited to the availability of mandamus relief.  (Id. at 12.)  Therefore, Petitioner concludes that § 2254(d) deference does not apply because the Pennsylvania Supreme Court did not adjudicate his case on the merits.  (Id.)

In Thomas v. Horn, 570 F.3d 105, 114 (3d Cir. 2009), the Third Circuit defined "adjudication on the merits" as "a decision finally resolving the parties' claim, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Id. (citing Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001)).  The Third Circuit then emphasized that the language of § 2254(d) does not specify that "adjudication on the merits" be from any particular level of state court.  Thomas, 570 F.3d at 115.  Therefore, even if the highest state court does not reach the merits of the case, a lower court decision that adjudicated the case on its merits still warrants § 2254(d) deference.  Id. at 116.

Therefore, the Court will adopt Judge Restrepo's detailed rationale for applying § 2254(d) deference.  (See Doc. No. 24 at 14 n.9.)  In the instant case, the Commonwealth Court explicitly denied all of Petitioner's claims on the merits.  See Forbes, 931 A.2d 88, 92-95, aff'd, 946 A.2d 103 (Pa. 2008).  Because an adjudication on the merits need not come from the highest state

9

court, the Commonwealth Court decision warrants § 2254(d) deference.

        2.    <u>Factual Findings</u>

In Objection 1, Petitioner argues that Judge Restrepo erred in concluding that the Department's recalculation of aggregation in 2006 did not constitute a change or increase in the sentences imposed by the sentencing judges, and that Petitioner did not fully serve his sentences "as imposed by the sentencing court."[12] (Doc. No. 25 at 2.) In his memorandum supporting his objections, Petitioner argues that at the time of the 1982 sentencing, "the law was unclear as to whether a judge had to aggregate the consecutive sentence with one imposed earlier (adding the minimum...and the maximum sentences together) to result in one greater sentence, or whether [the judge] could order one to be served after (parole on) another." (Doc. No. 25 at 8-9; Doc. No. 16 at 2 n.1.) Because Petitioner's sentences were not aggregated in 1982, he served his unaggregated sentences in full. (Doc. No. 25 at 9-10.) As Petitioner neared completion of Sentence 2, the Department aggregated both his sentences. (<u>Id.</u>) Therefore, Petitioner argues that the Department created a new sentence with a maximum release date of 2015. (<u>Id.</u> at 10.)

From the same undisputed timeline of events, Judge Restrepo found that Petitioner's punishment was not increased, but merely corrected to reflect the sentences already imposed by the sentencing courts. (Doc. No. 24 at 10.) Following <u>Gillespie v. Cmmw. Dep't of Corr.</u>, 527 A.2d 1061 (Pa. Commw. Ct. 1987), Judge Restrepo found that once Sentence 2 was imposed on

---

    [12] As noted, Petitioner was sentenced to ten to twenty years incarceration in 1981 ("Sentence 1"), and seven to fifteen years in 1982 ("Sentence 2"). (Doc. No. 1 at 2.) In 1991, after serving ten years, Petitioner was paroled on his first sentence, and began to serve Sentence 2 while on parole for Sentence 1. <u>Forbes</u>, 931 A.2d at 90-91. Petitioner's unaggregated release date on Sentence 2 would have occurred in 2006. <u>Id.</u> In 2006, when Petitioner's 1991 parole was rescinded, the remaining ten years on Sentence 1 were added back, making Petitioner's new release date in 2015. <u>Id.</u>

Petitioner, the aggregation of Sentences 1 and 2 was automatic.  (Doc. No. 24 at 10.)  The Court

agrees with Judge Restrepo's conclusion regarding the law of aggregation in Pennsylvania and

finds Petitioner's Objection 1 to be without merit.

Under Pennsylvania law, the aggregation of consecutive sentences is automatic and

mandatory.  Gillespie, 527 A.2d at 1065.  Pursuant to 42 Pa. Cons. Stat. Ann. § 9757, entitled

"Consecutive Sentences of Total Confinement for Multiple Offenses:"

> Whenever the court determines that a sentence should be served consecutively to one
> being then imposed by the court, or to one previously imposed, the court *shall*
> indicate the minimum sentence to be served for the total of all offenses with respect
> to which the sentence is imposed.  Such minimum sentence *shall* not exceed one-half
> of the maximum sentence imposed.

(emphases added).  "The term 'shall' rather than 'may' imports the mandatory, rather than

discretionary, nature of the statute." Gillespie, 527 A.2d at 1065.  Where, as in the instant case, a

sentencing judge specifies that the sentence imposed shall run consecutively to a defendant's pre-

existing sentence, but fails to specify the total aggregated minimum sentence as required by

42 Pa. Con. Stat. Ann. § 9757, the aggregation of those consecutive sentences still occurs "by

necessary implication[.]"  Id.  Section 9757 took effect in 1980, before Petitioner received

Sentence 2 in February 1982.  Forbes, 931 A.2d at 90.  Therefore, although Petitioner's

sentencing judge failed to order that Sentence 2 be aggregated with Sentence 1, that aggregation

still occurred under Pennsylvania law.

Pennsylvania courts have interpreted § 9757 to require "the aggregation and preservation

of the maximum terms of the consecutive sentences . . . [because, i]n so doing, both the

minimum and maximum terms of each sentence are preserved."  Gillespie, 527 A.2d at 1065

(citations omitted).  Petitioner's Sentence 1 was ten to twenty years.  Forbes, 931 A.2d at 90.

11

Petitioner's Sentence 2, ordered to run consecutively with Sentence 1, was seven to fifteen years. Id.  By operation of § 9757, Petitioner's aggregated sentence was seventeen to thirty-five years, giving him a maximum release date in 2015.  This seventeen to thirty-five year sentence became effective when Petitioner received Sentence 2 in 1982.  Therefore, Petitioner's argument that the Department's 2006 aggregation of his sentences constituted "a change in the sentences imposed by the sentencing judge [in 1982] or an increase in sentence" (Doc. No. 25 at 2) is without merit because the Department merely corrected their records to accurately reflect Petitioner's lawfully imposed total aggregated sentence.

3.    Double Jeopardy

In Objection 7, Petitioner argues "[Judge Restrepo's] finding that the parole that was granted and completed on the first sentence was a nullity under Pennsylvania law is erroneous." (Doc. No. 25 at 4.)  Petitioner states that, even if his parole in 1991 was erroneous under Pennsylvania law, treating it as void still violates Petitioner's double jeopardy rights.  (Id.)  In Objections 3 and 5, Petitioner contends that Judge Restrepo erred in finding that Petitioner "did not have a reasonable expectation of finality in his original sentences."  (Id. at 3.)  In Objection 3, Petitioner argues that this finding regarding his expectation of finality ignores the "repeated assurances" given to Petitioner regarding his sentence.  (Id.)  In Objection 5, Petitioner further contends that he was subjected to multiple punishments for the same offenses.  (Id.)

Petitioner argues that, under the United States Supreme Court's holding in United States v. DiFrancesco, 449 U.S. 117 (1980), "the Double Jeopardy Clause does not permit any increase in a sentence when the defendant has a reasonable expectation of finality in that sentence." (Doc. No. 25 at 15.)  Petitioner claims that "the Third Circuit . . .[has] interpreted DiFrancesco to hold

12

that even with an illegally lenient sentence, [the] expectation of finality crystallizes when the time for a government appeal has expired."  (Id.)  Therefore, Petitioner argues that he had a crystallized expectation of finality in his unaggregated sentences when the government failed to appeal Sentence 2.  Furthermore, Petitioner contends that if the Department's 2006 aggregation of his sentences is not held to violate his double jeopardy rights, there would be "no limiting principle . . . [preventing] an increase in an illegally lenient sentence at any time . . . with no possibility of the defendant ever achieving a reasonable expectation of finality."  (Doc. No. 25 at 15.)  For reasons that follow, the Court finds Petitioner's arguments to be without merit, and agrees with Judge Restrepo's conclusion that the Department's 2006 aggregation was not a double jeopardy violation.

Petitioner neglects the DiFrancesco Court's statement that "[t]he Double Jeopardy Clause does not provide [a] defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be."  449 U.S. at 137.  The Supreme Court's holding in DiFrancesco emphasizes that many criminal punishments ratified by Congress prescribe an indeterminate length of incarceration, and the mere fact that a defendant may then be unaware of the exact length of his imprisonment does not create a double jeopardy violation.  Id. Furthermore, Plaintiff's reliance on the Third Circuit's holding in Wilmer v. Johnson, 30 F.3d 451 (3d Cir. 1994) is unavailing.   In Wilmer, the Third Circuit held "the Double Jeopardy Clause does not prohibit an enhanced sentence in a state resentencing proceeding brought pursuant to [state law]."  30 F.3d at 457.  The Third Circuit determined that there is no reasonable expectation of finality in a sentence where a statute-authorized government appeal of that sentence has not yet concluded.  Id. at 458.  The Wilmer decision remains consistent with the

13

DiFrancesco Court's acknowledgment that double jeopardy is not violated merely because "the defendant is unaware of the precise extent of his punishment for significant periods of time, or even for life . . . ." DiFrancesco, 449 U.S. at 137.

Finally, Petitioner's argument that the Department's rescission of his parole violated his double jeopardy rights is incorrect.  When the Department aggregated his sentences in 2006, Petitioner's 1991 parole was revoked. See Forbes, 931 A.2d at 90-91.  In DiFranceso, the Supreme Court specifically held that "there is no double jeopardy protection against revocation of probation . . . or parole, " and that a defendant's "legitimate expectations [of finality] are not defeated . . . [when they are] placed on parole or probation that is later revoked."  449 U.S. at 137 (citations omitted).  Accordingly, Petitioner's double jeopardy rights were not violated by the Department's rescission of his 1991 parole.

### 4.   Due Process

Petitioner argues Judge Restrepo erroneously found that no due process violations occurred when the Department aggregated Petitioner's sentences a second time in 2006 and rescinded his 1991 parole.  (Doc. No. 25 at 4.)  Specifically, Petitioner contends that Judge Restrepo erred in concluding that the Department's actions were not "arbitrary, fundamentally unfair or conscience shocking in violation of the Due Process Clause . . . ." (Id. at 16.)  Under the Fourteenth Amendment's Due Process Clause, a state may not deprive "any person of life, liberty, or property without due process of law."  U.S. Const. Amend. XIV, § 1.  The Supreme Court has interpreted due process as having both substantive and procedural components.  E.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998).  Petitioner alleges both substantive and procedural due process violations, which will be analyzed in turn.  The Court agrees, however,

14

with Judge Restrepo that, while regrettable, the Department's actions did not violate Petitioner's due process rights.

a.  Procedural Due Process

The procedural component of due process protects an individual from "arbitrary takings" by the government by guaranteeing prior notice and a meaningful opportunity to be heard.  See e.g., Fuentes v. Shevin, 407 U.S. 67, 80-81 (1972).  To demonstrate a procedural due process violation, a party must prove:  (1) that the liberty interest they assert is encompassed within the Fourteenth Amendment's protection of life, liberty or property; and (2) if the Due Process Clause protects the interest asserted, whether sufficient process was afforded to protect it.  See Newman v. Beard, 617 F.3d 775, 782-83 (3d Cir. 2010).  Here, Petitioner argues that he had a protected liberty interested in being released from prison in 2006 which was deprived by the Department's delayed aggregation of his sentences without due process of law.  (Doc. No. 25 at 16-18.) Petitioner also argues that the Department's rescission of his 1991 parole deprived him of a liberty interest in that parole without due process of law.  (Id. at 18.)  Because Petitioner had no protected liberty interest in an early release from prison, or in his 1991 parole, the Court finds no procedural due process violations.

The Third Circuit has identified two types of liberty interests retained by prisoners that require the protections of due process:  (1) where state law "create[s] a liberty interest in freedom from restraint that imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" Renchenski v. Williams, 622 F.3d 315, 325 (3d Cir. 2010) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)), and (2) where "severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the

15

opportunity for notice and an adequate hearing." Renchenski, 622 F.3d at 325 (citations

ommitted).

In Evans v. Sec'y Pa. Dep't of Corr., et al., 645 F.3d 650 (3d Cir. 2011), a prisoner

alleged substantive and procedural due process violations as a result of an erroneous calculation

of his dates of imprisonment.  Eleven years after the prisoner, Evans, was sentenced, the

Pennsylvania Department of Corrections eliminated a five-year credit on Evans' sentence as not

in accordance with Pennsylvania law.  Evans, 645 F.3d at 654-55.  The Department's action was

later ratified by the sentencing court.  Id.  Evans then filed a habeas petition in federal court

alleging due process violations.  Id. at 655.  The district court granted Evans' petition, finding

that the Department's amendment and sentencing court's ratification were "arbitrary and

capricious."  Id.  The Third Circuit reversed the district court, holding that Evans' due process

rights were not violated.  Id. at 666.

The Third Circuit's analysis of the petitioner-prisoner's procedural due process claim in

Evans is instructive to the instant case.  In Evans, as is the case here, "[t]he sentence itself [was]

entirely lawful, though the record keeping associated with it was in error."  Id. at 663-64.  Evans'

sentence was originally miscalculated, and the error was not discovered and corrected by the

Department for eleven years.  Id. at 663-65.  However, the Third Circuit held that "Evans was not

stripped of any state-created liberty interest because state law never entitled him to be released on

the [erroneously early] date . . . ."  Id. at 664.  Here, as in Evans, Petitioner had no protected

liberty interest in an early release from prison in 2006 merely because the Department failed to

aggregate his sentences as required by state law.  With regard to the severe changes in

confinement prong, the Third Circuit held in Evans that the Department's correction of Evans'

16

sentence did not constitute a severe alteration in the conditions of the defendant's incarceration because "while the administrative correction increased the period he was confined beyond what [Evans] had expected, it did not at all change the conditions under which he was confined."  Id. at 665.  Similarly, in the instant case, although the Department's delayed aggregation of Petitioner's sentence resulted in a longer period of incarceration than Petitioner expected, there was no procedural due process violation because the conditions of Petitioner's incarceration were not affected.

Finally, the Department's rescission of Petitioner's parole did not violate his procedural due process rights.  Petitioner's 1991 "constructive parole"[13] was rescinded when the Department aggregated his sentences in 2006.  See Forbes v. Pa. Dep't of Corr., 931 A.2d 88, 90-91 (Pa. Cmmw. Ct. 2007).  In Jago v. Van Curen, 454 U.S. 14 (1981), the United States Supreme Court held there was no protected liberty interest in the myriad decisions made by prison administrators and parole boards.  In Jago, the petitioner-prisoner's parole was rescinded after the parole board learned that the petitioner had lied in his parole interview.  Jago, 454 U.S. at 15.  The Supreme Court held that the petitioner-prisoner's procedural due process rights were not violated by this retroactive rescission because the petitioner had no liberty interest in his parole under the due process clause.  Id. at 20-21.  "We would severely restrict the necessary flexibility of prison administrators and parole authorities were we to hold that any one of their myriad decisions with respect to individual inmates may, as under the general law of contracts, give rise to protected 'liberty' interests which could not thereafter be impaired without a constitutionally mandated hearing under the Due Process Clause."  Id. at 19.

---

[13]  See supra at 2, n.2.

17

The Third Circuit has interpreted <u>Jago</u> to mean that "[Pennsylvania and federal law has not created] a liberty interest deserving of procedural due process protection . . . [arising from a prisoner's] effort to be released from incarceration on legally proper parole." <u>Evans</u>, 645 F.3d at 665. Therefore, Petitioner's procedural due process rights were not violated when his parole was rescinded.

Because Petitioner failed to establish that his interest in being released from prison on a certain date and that his interest in being paroled are protected liberty interests, there was no due process violation.

b.      Substantive Due Process

Substantive due process protects an individual from the arbitrary or capricious exercise of government power "without any reasonable justification in the service of a legitimate governmental objective." <u>See</u> <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 845-46. To evaluate whether an individual's substantive due process right has been violated, a court must first "define the exact contours of the underlying right . . . ." <u>Leamer v. Fauver</u>, 288 F.3d 532, 546 (3d Cir. 2002) (quoting <u>Lewis</u>, 523 U.S. at 842). In the instant case, Petitioner alleges a substantive due process right to be released from prison on a fixed date, and a violation of that right via executive action, namely, the Department's 2006 aggregation of his sentences. (Doc. No. 3 at 11-12; Doc. No. 25 at 16-18.) Where an alleged violation of a substantive due process right stems from executive action,

> the threshold question is whether the . . . governmental [action] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience . . . . That judgment may be informed by a history of liberty protection, but it necessarily reflects an understanding of traditional executive behavior, of contemporary practice, and of the standards of blame generally applied to them. Only if the necessary condition of egregious behavior were satisfied would there be a possibility of

18

recognizing a substantive due process right to be free of such executive action . . . .
Lewis, 523 U.S. at 847 n.8.  The Court will adopt Judge Restrepo's conclusion that the
Department's delayed aggregation of Petitioner's sentences was not a sufficiently egregious or
conscience shocking executive action to constitute a violation of Petitioner's substantive due
process rights.

In Evans, the Third Circuit "underst[ood the petitioner] to be asserting that it is a
fundamental right to be released from prison on or about a date certain[]" and alleging a violation
of that right by executive governmental action, namely, the Department's correction of his
sentence.  Evans, 645 F.3d at 659.  Applying previous precedential decisions, the Third Circuit
held "absent judicial vindictiveness, an increase to make the sentence conform to the intention of
the sentencing judge is constitutional."  Id. at 660 (citing United States v. Guevremont, 829 F.2d
423, 427-28 (3d Cir. 1987)).  The Third Circuit then found the eleven year delay in the correction
of Evans' sentence was "certainly regrettable," but held that the correction was not motivated by
judicial vindictiveness and was not "conscience-shocking."  Evans, 645 F.3d at 661.  Therefore,
the Department's correction did not violate Evans' substantive due process rights.  Id. at 661-62.

Similarly here, Petitioner's alleged substantive due process violation stems from the
Department's delayed correction of his sentence.  (See Doc. No. 25 at 16-18.)   In Evans, the
Third Circuit held that a prisoner "should [not] escape punishment when the error at issue is not
in the sentence itself but only in the record keeping associated with the sentence."  Evans, 645
F.3d at 662.  Without "evidence to suggest that the [Department's] delay was anything more
culpable than negligence or that the correction of his sentence lacked a sound basis[,]" the
Department's correction of a clerical error computing a prisoner's sentence length will not

19

constitute a substantive due process violation.  Id.[14]

5.      Significance of Aggregation by the Department of Corrections

In Objection 9, Petitioner contends Judge Restrepo erred by stressing the significance of

the Department's, and not a court's, aggregation of Petitioner's sentences.  (Doc. No. 25 at 4, 13-

14.)  Furthermore, Petitioner argues that the Department did not have the authority to aggregate

his sentences because, in doing so, the Department unlawfully "create[d] a new sentence [that]

increas[ed] the punishment of fully served sentences."  (Id. at 14.)  While the Department's delay

in aggregating Petitioner's sentence was unfortunate, Petitioner's argument must fail because that

aggregation was an accurate reflection of Petitioner's lawfully imposed total sentence.

"The Department is an executive branch agency [of the Commonwealth] that is charged

with faithfully implementing the sentences imposed by the courts."  McCray v. Pa. Dep't of

Corr., 582 Pa. 440, 450 (Pa. 2005).  As part of its duty to faithfully implement lawfully imposed

sentences, "[t]he Department . . . is responsible for calculating the minimum and maximum terms

of prisoners committed to its jurisdiction."  Gillespie v. Cmmw. Dep't of Corr., 527 A.2d 1061,

1065 (Pa. Cmmw. Ct. 1987).  In the instant case, the Department failed to accurately calculate

---

[14]  Petitioner also stresses the Third Circuit's statement that "there might be a 'temporal limit' [imposed by the requirements of due process] on a court's ability to correct a sentencing problem[,]" Evans, 645 F.3d at 661-62, and argues that the twenty-four year delay in the Department's correction of his sentence is an "extreme case" amounting to a constitutional violation.  (Doc. No. 33 at 4-5.)  However, as in Evans, Petitioner has presented no evidence demonstrating that the Department's "delay [in correcting his sentence] was anything more culpable than negligence or that the correction lacked a sound basis."  Evans, 645 F.3d at 662.  Absent evidence of culpability by the Department rising above the level of negligence, the delayed correction to Petitioner's sentence cannot constitute a substantive due process violation.  While a twenty-four year delay in correcting the aggregation is regrettable, Petitioner cannot escape lawfully imposed punishment merely because of a clerical error by the Department.  See id. at 661-62.

Petitioner's total aggregated sentence following his conviction on Sentence 2.  (Doc. No. 1 at 2.) In 2006, the Department discovered this clerical error and correctly aggregated Petitioner's sentence.  Forbes, 931 A.2d at 91.  In doing so, Petitioner argues that the Department unlawfully created a "new sentence." (Doc. No. 25 at 14.)

Petitioner's argument is incorrect because the Department's 2006 aggregation of Sentence 1 and Sentence 2 was mandatory and automatic pursuant to Pennsylvania law.  See Gillespie, 527 A.2d at 507-8; 42 Pa. Cons. Stat. Ann. § 9757.  Petitioner did not receive a new or increased sentence in 2006: the aggregated sentence computed by the Department in 2006 was the same as Petitioner's total aggregated sentence in 1982 when he was convicted on Sentence 2.  The Department's 2006 aggregation did not change Petitioner's sentence, but instead faithfully implemented the judgment of the sentencing court by accurately calculating the total combined length of Petitioner's consecutive sentences.

### 6.   Denial of Certificate of Appealability

In Objection 13, Petitioner argues Magistrate Judge Restrepo erred in concluding that a COA should not issue because a reasonable jurist could not disagree with Judge Restrepo's denial of relief. (Doc. No. 25 at 5.)  A final order under § 2254 cannot be appealed from the district court unless the district court judge issues a COA.  28 U.S.C. § 2253(c)(1)(A).  For the Court to issue a COA, Petitioner must make "a substantial showing of the denial of a constitutional right."  Miller-El v. Cochrell, 537 U.S. 322, 336 (2003).  "A prisoner seeking a COA must prove 'something more than the absence of frivolity' or the existence of mere 'good faith' on his or her part."  Id. at 337 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). Where the district court rejects a prisoner-petitioner's constitutional claim on the merits, in order

for the COA to issue "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El, 537 U.S. at 338 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  Here, Petitioner has not met the standard for the issuance of a COA, and the Court will adopt Judge Restrepo's conclusion that a COA should not issue in this case.

Petitioner has not met the burden set forth by the Supreme Court in Miller-El.  537 U.S. at 336-37.  Reasonable jurists could not debate that the Department did not violate Petitioner's constitutional rights when it aggregated his sentences in 2006.  Here, Petitioner cannot demonstrate that the delay in the Department's aggregation of his sentences was a result of anything other than negligence.  "'Negligently inflicted harm . . . is categorically beneath the threshold of constitutional due process' and will never be conscience shocking." Evans, 645 F.3d at 660 (quoting Lewis, 523 U.S. at 849).  As the Third Circuit wrote in Evans, "[t]he deep disappointment which that change no doubt engendered is certainly regrettable, but that does not make the [delayed] correction [of the petitioner's sentence] conscience-shocking." Id. at 661. Without evidence of any culpability greater than negligence, Petitioner cannot demonstrate that a reasonable jurist would disagree with the Court's assessment of his constitutional claims. Therefore, the Court concurs with Judge Restrepo and will not issue a COA.

**V.    CONCLUSION**

For the foregoing reasons, the Court will approve the Report and Recommendation (Doc. No. 24) and deny Petitioner's Revised Petition for Writ of Habeas Corpus (Doc. No. 4).  A certificate of appealability will not be issued.

An appropriate Order follows.

22